You may start whenever you're ready. May it please the Court. Good morning, Your Honors. My name is Chaplain Carmichael, and this is my colleague, Samantha Abraham. We are both certified law students from UCI Law School under the supervision of Professor Paul Hoffman, representing Appellant Kevin D. Sawyer. Before I begin, may I reserve two minutes for rebuttal? You'll have to keep track of your own time, but we'll try. Under Turner and McCabe, the power of prison officials to confiscate written materials from inmates is not unlimited. This is a case where defendants seize Mr. Sawyer's handwritten notes on books that are not banned and that are available to every inmate. How do we even know that? I don't even – I can't figure out from the record that now exists what exactly was seized. It's completely murky to me, and it sounds like everybody has a different version of what they think was seized. How can we even adjudicate this without sending it back for more detail? Your Honor, in Mr. Sawyer's initial complaint, this is Supplemental Excerpt of Record, page 141 to 142, he lists the 19 different source materials that he took notes on, and these include books like Franz Kafka's The Trial, Chairman Mao's Little Red Book. Except we're at the summary judgment stage. Correct. And the summary judgment materials, as distinct from the complaint, I did not see a list from either side. I mean, one side's saying these are not banned and they're fine, and the other side says, no, no, they're all gang-related, but we don't have the materials to look at and figure that out. So that's very frustrating, at least to me. I agree, Your Honor. But historically, this court, especially in Rand, has accorded pro se liberal construction and has stated that it will tolerate informalities from pro se litigants. Except that for many years now, pro se litigants have been sent a notice that explains that they have to support by affidavit. I mean, this may not be your problem so much as it is the opposing party's problem because they're characterizing things without showing them to us. But it's just my frustration with the case, that's all. I agree, Your Honor. And historically, in cases where there are seizures of inmate-ridden materials, defendants have provided the district court judge with the materials. They can even be submitted under seal. But district court cases that defendants cite and support, including Taylor, Watts, and Hawkins, all involved the district court analyzing the materials at issue there. In Taylor, the district court judge received the materials under seal and then analyzed them before coming to a conclusion in regards to Turner. And here we have books that were not banned. We have notes on books like Kafka's The Trial, Chairman Maslow's Red Book, and Howard Zenz's A People's History of the United States. It's undisputed that Mr. Sawyer is a prison journalist with a spotless prison record, and defendant himself admits that Sawyer is not gang-related or affiliated in any way. So on this record, there is a genuine dispute, especially when Mr. Sawyer stated that his research was in no way in regards to amassing documentation on the BGF prison gang, and that there are few, if any, passages that have anything to do with the BGF. So Sawyer, in the record, disputed the characterization that his notes relate to the BGF or have any legitimate relation to prison security. He took notes on materials that were not banned. These materials were available to every inmate. He read these materials while in prison, and he's an award-winning journalist. Journalists take notes on books. It's what they do. He's received many awards. He's published over 100 articles. These were materials that he used as research, and he continually stated that throughout the record. So you say that he's demonstrated a material dispute of fact, thus summary judgment was inappropriate. But he also has a Rule 56D motion that was denied. Are you claiming that the summary judgment grant should be reversed and the matter should go to trial, or the summary judgment should be reversed and the denial of the 56D additional discovery should also be reversed and it should go back for round two of a summary judgment consideration? What is the direction that you seek? Your Honor, either of those instances would be beneficial for Mr. Sawyer here. We simply believe the district court in not reviewing the notes whatsoever ignored the duty that was required of it under Turner because courts under Turner are required to determine whether the prison officials properly exercised their role, and instead we believe the district court here rubber-stamped the seizure by not even reviewing the materials whatsoever. So at the very least, we believe Mr. Sawyer is entitled to trial to determine whether his notes actually implicated prison security and to determine... Yeah, but I'm going to go back to Judge Graber's initial question. We have a declaration from Mr. Sawyer in which he makes very broad allegations. They're not nearly as specific as the matters in his complaint. And then we have Cavanolo's declaration, which gives us a little bit more information, but says, well, there was stuff here including stuff on George Jackson and by other members of BGF. But it doesn't address the allegations in the complaint about Chairman Mao, Franz Kafka's The Trial, Howard Zinn's History of the United States. We've got two sides talking past each other, neither one of them providing any evidence to us so we can know what materials were confiscated. Correct, Your Honor. So how do we resolve this? What needs to happen at the district court level or needs to happen here? We believe so. The grant of summary judgment was itself improper, and we believe the case should be remanded to the district court to determine to flesh out the materials of the notes themselves. Defendant can submit these under seal so that the district court can then analyze the contents of the notes. And I see that my time is up, so I want to yield the rest of my time to... You may do that. Good morning, Your Honors. My name is Samantha Abraham. Turner and McCabe outlined the process to be followed in determining whether to grant qualified immunity. Turner establishes that there must be clearly established law which was violated by the defendant's action, and McCabe states that a reasonable official in the defendant's position should have known that their action was violating clearly established law. McCabe, a case decided by this court, states that materials cannot be confiscated if they are not racially inflammatory, if they are not inciting violence or racially inflammatory enough to incite violence. In this record, the only evidence we have as to the substance of the materials comes from Mr. Sawyer himself, who stated that the materials... Well, that doesn't really answer the question. I mean, I have the same issue with qualified immunity as I do with the main part of it because we don't know exactly what was confiscated, and it may be that some of the material was confiscatable and some was not. But... So as to the stuff that was not, I suppose that's where your argument comes in, that it was clearly established. Exactly, Your Honor. For the materials... I mean, in Harrison, another case, the court stated that even materials directly related to the BGF were not confiscatable and it would be a First Amendment violation if those materials didn't issue a call to violence. And in this case, again, there's nothing in the record to indicate that the materials did issue such a call. But if the materials related, for example, to George Jackson, that would be confiscatable, wouldn't it? Even then, Your Honor, so long as there wasn't a specific call to action per Harrison, if there wasn't a specific call to action or call to violence, they would not be confiscatable. Under what principle? That's what the court said in that case, just saying that if it wasn't a threat to prison security and if, like... Well, it doesn't have to be directly threatening in the specifics to be threatening to prison security, does it? I mean, there's a list of banned materials, right? That's correct. And things on that list are confiscatable. And there may be a good penological and safety reason for that, even if an individual piece of those is not immediately threatening. Absolutely, Your Honor. However, in this case, none of the source materials, the 19 materials that Mr. Sawyer stated he took notes on that were seized, were on that banned list. Therefore, all of the materials presumably... Well, there are quotes and pictures of George Jackson. I think that some of the other matters, the Asada Shakur, I believe, was on the list, wasn't it? No, Your Honor. None of the materials were on the list. Okay. And not the Watani Tahima's article? None of the materials, Your Honor, were on the banned list. Okay. And other writings about Black August? That's pretty general. That's in the Kavanaugh Declaration. That's not on the list? We don't know what those specific writings were, so presumably they weren't on the list if he had access to them while he was incarcerated. And the only literature that was available to him was that that was available to the rest of the prison population. With that, Your Honor, I have to reserve the rest of the time for rebuttal. You may do that. May it please the Court. Byron Miller on behalf of Defendant Appelli, Sergeant Cavagnolo. At the time of Sawyer's allegations, Sergeant Cavagnolo was a prison gang investigator with nearly two decades of prison gang experience, and he had been investigating specifically the BGF prison gang for the majority of that time. And it was the specter of BGF prison gang violence at San Quentin State Prison that posed a weighty responsibility on Cavagnolo to catch warning signs before they turned into tragedies. And in this case, Cavagnolo confronted serious warning signs. He reviewed materials that he concluded would put Sawyer at risk and would also jeopardize institutional security. And what this case hinges on is the deference owed, under Supreme Court authority, to Cavagnolo's experience-based determinations. Well, part of the problem is we can't, it seems to me, determine whether he appropriately or inappropriately exercised discretion because we still don't know what most of the materials are. And if they are as described in the complaint, it's hard for me to see how they would all be under the rubric of problematic materials that could be confiscated. Yes, Your Honor, let me address that point. There was no dispute in the record regarding what the content was of what was withheld. In Sawyer's complaint, Supplemental Excerpts 141 to 142, he alleged that he had missing notes from 19 publications and authors. Then, in Sgt. Cavagnolo's declaration, supporting summary judgment, and that's at Supplemental Excerpts 99, he described the materials he withheld as including quotes from George Jackson as well. But it's ambiguous. He says the file includes. Right. It could include Goldilocks and the Three Bears also. But it's not limited to. It's not correct. That's not what it says it's not limited to, but it includes George Jackson quotes as well as, quote, other writings about Black August. And that in itself could. But it doesn't say that that's everything. That's the problem with includes. And I just think it seems not to really be responsive to at least the complaint. And I understand there are sort of problems between the complaint and the summary judgment materials. But there certainly are things listed in the complaint that do not fall within the list of materials at SCR 99. You know, Howard Zinn's History of the United States is not a picture of George Jackson, is not an image or a writing about Black August, is not any of those things, isn't even close. And so I just have a problem with the way this ended up foreshortened without either further discovery or some other proceeding to figure out what exactly is contained in this material. Your Honor, part of the only thing that's at issue on appeal is notes. It's not the picture. It's not the article. All that Sawyer is challenging on this appeal is his notes and interpretations from those materials. Right. And his notes, he says, at least in the complaint, concern a bunch of things that are not Black August or Black August related. He never says that his writings are not Black August or George Jackson related. He only argues that Black August isn't a prison gang concept so that he can write about those things, and that's not a problem. But, I mean, if we look at also on summary judgment, Sergeant Kevan Yellow submitted a property receipt, and he said in that, and that's at Supplemental Excerpts 100 at the top, and it says what he confiscated was Black August and George Jackson. And other written material indicative, whatever that means. I mean, that's his interpretation, other written material indicative of the BGF gang. That's correct. So what does that mean? We don't know what that is. Well, Sawyer never disputed that it was indicative of BGF or that his writings were about Black August. So the district court didn't need to wade into a content-based analysis of each and every note when it was undisputed that they were about Black August and George Jackson. Also, that's consistent with the- Yeah, but how do you get handwritten notes about Franz Kafka's The Trial that somehow relate to Black August? That's a pretty big leap of logic. That was Sergeant Kevan Yellow's interpretation of the documents. He never refers to The Trial. He's the correctional expert. He looked at those documents, at those notes, and that was his- We don't even know if they're looking at the same thing. That's the whole problem. He doesn't give us an inventory of what he took. So he can't give an- I mean, it's not clear that he would know where all these quotes came from. Does he have this stuff to destroy them? He still has it. He still has it. Well, then it should be easy enough. I mean, you could provide this to the district court in camera, couldn't you? We could, but I don't think we need to. Because we're just supposed to sort of buy a pig in a poke that says, well, I think this is all gang-related and I'm an expert, and so you can't consider this as to whether this violates the prisoner's First Amendment rights because I say it doesn't? Well, because Sawyer never came back on opposition to summary judgment and said, no, my notes had nothing to do with Black August. Well, no, but he asks for more information. That's the other thing. He doesn't specify 56D, but he says because it's difficult for a plaintiff or prisoner to obtain access to information from the prisoner's officials, he wants at least a stay until he can get more information and necessary discovery. That's what he's asking for. So the district court didn't even rule on that, apparently may have overlooked it as being a 56D request. But why shouldn't that be granted here? Your Honor, my interpretation of that and also the district court's, I believe, was that that had to do with his request to identify additional defendants. And so I think he was looking for discovery to try and identify. Well, regardless, if the record is incomplete and does not show what it is that was confiscated, how in the world can you get summary judgment that the unnamed, undisclosed materials that were confiscated were properly confiscated? That's your burden to get summary judgment, isn't it? Yes or no, it's your burden to obtain summary judgment. That's correct. Okay, and so how can we determine that it was proper if we don't know what was confiscated exactly? We don't need to know exactly what was confiscated. We don't need to see the exact notes because we know what they were about. Well, we don't. That's the problem. I mean, isn't that the problem, that the district court just deferred to what Kavanaugh interpreted the materials to be as a whole without having done any analysis of the contents of the seized notes, whatever they were? Isn't that the problem here, that it's very hard for you to argue that you maintain your burden in the face of that deference given to interpretation of unknown notes? So Sawyer presumably knew what each of his notes were about. He knew the authors they were from, and he didn't come back and he knew the titles of each of the 19 source materials, but he didn't come back and say, no, he's mischaracterizing them. So what? The district court had no basis to decide what these notes were because it didn't have the notes. And it's you who were seeking summary judgment, not Mr. Sawyer. He was seeking a trial. What the Supreme Court said in Beard v. Banks is that it looks at the reasonable relation between the action taken and the government interest and that all disputes regarding professional judgment deference goes to the present official. And on summary judgment, Kavanaugh showed the relationship between the two. That's what the case was about. No, he didn't. He had a summary statement saying, I'm an expert and I've decided that all this stuff that I'm not telling you what's in it or showing you what's in it was appropriate for me to confiscate. The record isn't there. His conclusion is there. I mean, it's a little bit like saying, here are the facts about the violent things that were happening at the prison, and it was my judgment that so-and-so needed to be removed to a different location. But you have all the underlying facts, and then you defer to the judgment. Here we have the judgment but no facts. That's the problem. Well, what the test looks at is the justification. The justification is fine, but it's just a matter of form. But we don't have anything that addresses what Sawyer said. He said he took my notes on Howard Zinn, History of the United States. He took my notes on Mousy Tung's Little Red Book. He took my notes on Franz Kafka's The Trial. And how do we know that those notes related to George Jackson and Black August? Because he doesn't dispute that they did. He didn't come back on opposition to summary judgment and say, this had nothing to do with Black August, this had nothing to do with George Jackson. He just argued that Black August as a concept, that's not prison gang related. That's not BGF related. And on that matter, we defer to Cavagnolo's professional judgment because he's the expert on that matter. Are we to assume then that Cavagnolo made a judgment about notes on The Trial, Franz Kafka's The Trial? That Cavagnolo made a judgment on the notes about, yes, about all of the 19 items. We assume that is true, that his notes were on all those 19 items. And Cavagnolo looked at them, and he determined that they were Black August and George Jackson. One factual matter, counsel. Is it true that none of the items on Sawyer's list are listed on the prisons-excluded materials? Is that a Shakur matter? The Watani Ta'i Himba? Are any of these on the list? They are not on the list. The list is an exclusive. It's not an exhaustive list. Also, just because his notes and interpretations from those items, I mean, just because those items aren't on the list, that doesn't mean that his notes and interpretations from those source items didn't pose a security risk. Thank you, counsel. Your time has expired, and I think we understand your position. I appreciate it, Your Honors. And we'll give you one minute for rebuttal. Thank you. May it please the Court. I'd like to begin by correcting defendant's comments on the record. Sawyer repeatedly disputed that his notes were BGF-related throughout the record. He said that the research was in no way in regard to amassing documentation on the BGF prison gang, and he said that few, if any, passages have anything to do with the BGF. Two, the cases consistently say that when a prison official seizes an inmate's written materials, the district court must look at the materials. Here, according to all reasonable inferences in Sawyer's favor, Sawyer created enough of a genuine dispute for the district court in not analyzing the materials in properly affirmed summary judgment. This court in Hargis said that a court must determine whether there's a genuine dispute to determine whether the regulation as applied to the plaintiff reasonably related to legitimate penological interests. Here, the district court had an obligation to determine whether Mr. Sawyer's notes on the likes of the trial and Maslow's red book actually implicated prison security or even the BGF. And three, defendant consistently never makes any attempt to justify the seizure of more than seven of the 19 materials. Defendant consistently ignores the other 12. Thank you, counsel. The case just argued is submitted. We appreciate the helpful arguments from all of you on this challenging case, and UC Irvine, you've done a lot of work today. We appreciate that. It's helpful to us. We will now take about a 10-minute recess before hearing the remainder of the calendar. All rise.
judges: Graber, Bybee, Arterton